[No. C023863. Third Dist. Nov. 20, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN DAVID LITTLE, Defendant and Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General,

Roger E. Venturi and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Appellant.

Elizabeth M. Campbell for Defendant and Respondent.

## OPINION

MORRISON, J.—A jury convicted defendant of evading an officer (Veh. Code, § 2800.2) and resisting, obstructing, or delaying a peace officer (Pen. Code, § 148, subd. (a)). The trial court granted defendant's motion for a new trial because the People failed to disclose to defendant that one of the People's witnesses had a prior felony conviction. The People appeal, contending the trial court erred in granting a new trial because a prosecutor is not required, absent a request, to obtain criminal history information ("rap sheets") on all critical witnesses. We disagree and hold that an informal request for standard reciprocal discovery is sufficient to create a prosecution duty to disclose the felony convictions of all material prosecution witnesses if the record of conviction is "reasonably accessible" to the prosecutor. (See Pen. Code, § 1054.1 and In re Littlefield (1993) 5 Cal.4th 122, 136 [19 Cal.Rptr.2d 248, 851 P.2d 42].) We shall affirm the trial judge's grant of a new trial.

### FACTS AT TRIAL

On the morning of August 15, 1995, Highway Patrol Officer Gary Cornwell received information regarding a stolen vehicle. Shortly after receiving the report, Cornwell spotted the vehicle driven by defendant, activated his siren and emergency lights, and gave chase.

Cornwell testified that defendant drove at approximately eighty miles per hour, nearly rear-ended one vehicle (forcing that vehicle onto the right shoulder), and passed another vehicle (forcing two more vehicles to swerve onto the right shoulder). Defendant then turned on to another road, where he drove on the wrong side for about three-quarters of a mile, until he made a right turn onto a gravel roadway in a mobilehome park (park). He continued to speed in the park, skidding and kicking up large clouds of dust and rocks, until he ran off the road into bushes.

Cornwell testified that defendant drove through the park at 30 to 40 miles per hour and that there were "numerous kids riding their bicycles throughout the [park]." He testified he saw Dustin Mayfield and Wilford Wright's two children on bicycles, and that the Wright children were between the ages of

five and twelve. Other witnesses contradicted his testimony. Wilford Wright (Wright) testified that, while he was in his yard with his one-year-old son, defendant's car was traveling at least forty-five miles per hour and came within five feet of his two-year-old son, Tray. Furthermore, he recalled that Tray was the only child in the street, and that neither of his children were on bicycles.

## New Trial Motion

Defendant filed a motion for a new trial on the ground that the district attorney had failed to disclose that witness Wright had suffered a prior felony conviction for assault. Defendant relied on *Brady* v. *Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] and Penal Code section 1054.1. (All unspecified section references are to the Penal Code.)

The trial court stated that it was "inclined to think" from *People* v. *Robinson* (1995) 31 Cal.App.4th 494 [37 Cal.Rptr.2d 183], *In re Littlefield*, *supra*, 5 Cal.4th 122, and from a reading of section 1054.1, that section 1054.1 imposes upon the prosecutor the duty to inquire of the felony conviction record of every material, prosecution witness, whose credibility is likely to be critical to the outcome of the trial. The court concluded that Wright was a "critical witness" and that his "credibility was very, very important in this case." The court also concluded that "it is the duty of the district attorney to get a rap sheet, if the information isn't otherwise available on every critical prosecution witness, and deliver that rap sheet to the defense counsel at a time when it is early enough for defense counsel to use that information effectively in preparing and presenting a defense at the trial."

## Discussion

Discovery provisions of Proposition 115 (§§ 1054-1054.7), adopted by a vote of the people at the June 1990 Primary Election, provide that discovery in criminal cases is reciprocal in nature. (*See Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 372-374 [285 Cal.Rptr. 231, 815 P.2d 304].) "In criminal proceedings, under the reciprocal discovery provisions of section 1054 et seq., all court-ordered discovery is governed exclusively by—and is barred except as provided by—the discovery chapter newly enacted by Proposition 115. . . ." (*In re Littlefield*, *supra*, 5 Cal.4th at p. 129, citation omitted.) Under section 1054.1, "[t]he prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, *if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:* [¶] (a) The names and addresses of persons the prosecutor intends

*to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence.* [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial." (Italics added.)

■  The People contend they had no duty to disclose Wright's felony conviction because they did not know about the conviction and the defense counsel should have already known about Wright's conviction because he represented a codefendant in a previous trial.

Under *In re Littlefield, supra,* 5 Cal.4th 122, even if the prosecution did not have *actual* knowledge of the witness's prior conviction, and the defense had alternative access to that information, section 1054.1 creates a prosecution duty to inquire and disclose. In *Littlefield,* the People informally requested the defense to provide them discovery as required by section 1054.3 (setting forth the defense's duty of disclosure).[1] One of the provisions of section 1054.3 is that the defense "shall disclose to the prosecuting attorney . . . [t]he names and *addresses* of persons, other than the defendant, he or she intends to call as witnesses at trial, . . ." (Italics added.) The defense did not comply.

The defense refused to disclose the address of one of its witnesses, arguing that "the discovery order was invalid because the police had had equal access to the witness, could have obtained her address, but had neglected to do so." (*In re Littlefield, supra,* 5 Cal.4th at p. 128.) Furthermore, the defense stated they did not know the address, and deliberately did not obtain the address, because they feared the witness "would be intimidated by the prospect of being contacted by the police department or the district attorney's office." (*Id.* at pp. 126-127.) The trial court ordered the defense to either obtain the witness's address for the prosecution or produce

---

[1] Section 1054.3 provides in full: "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (a) the names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial. [¶] (b) Any real evidence which the defendant intends to offer in evidence at the trial."

the witness in court so the prosecution could interview her prior to trial. (*Id.* at p. 127.) The defense again refused, and the trial court held them in contempt. (*Ibid.*)

The California Supreme Court affirmed the ruling of contempt, rejecting the argument that the defense had no duty to learn or acquire the address of a prospective witness because the prosecution did not have such a burden under section 1054.1. (*In re Littlefield, supra,* 5 Cal.4th at p. 133.) The defense argued that under section 1054.1 the prosecution had to only reveal what it actually knew, and, following the notion of balanced, reciprocal discovery, the defense should have, at most, a like burden. (5 Cal.4th at p. 133.) The court agreed the prosecution and defense should have a like burden, but rejected the argument they only have to reveal what they know. (*Id.* at p. 134.) The court held *both* parties "have the *statutory* obligation to disclose to the other party the names and reasonably accessible addresses of witnesses." (*Id.* at p. 133, original italics.) Therefore, a party could not use the excuse of ignorance. The court concluded the objective of modern discovery is the "quest for truth," and that gamesmanship such as "the practice of deliberately failing to learn or acquire information that, under applicable statutes or case law, must be disclosed pretrial, concluding that such gamesmanship is inconsistent with [that objective]." (*Ibid.*) Even though counsel did not possess the address they had a duty to disclose, creating a duty to inquire. Similarly, the People in this case argue they had no duty to disclose what they did not actually know, and, as with the defense in *Littlefield,* they are mistaken.

Section 1054.1 requires disclosure of specified information "if it is in the *possession* of the prosecuting attorney or if the *prosecuting* attorney knows it to be in the *possession* of the investigating agencies . . . ." (Italics added.) The People contend they had no actual knowledge of Wright's felony conviction; therefore, it was not in their possession. *Littlefield,* though, held that "possession" includes information the prosecution possesses or controls, and encompasses information reasonably accessible to the prosecution. (5 Cal.4th at p. 135.) Furthermore, "materials discoverable by the defense include information in the possession of all agencies (to which the prosecution has access) that are part of the criminal justice system, and not solely information 'in the hands of the prosecutor.' " (*Ibid.*)

The court held the likely purpose of including the words "in the possession" in section 1054.1 "was simply to clarify and confirm that the prosecution has no *general duty* to seek out, obtain, and disclose all evidence that might be beneficial to the defense." (*In re Littlefield, supra,* 5 Cal.4th at p. 135, original italics.) Furthermore, the court emphasized that "Section

1054.1 requires disclosure of *specified* information," not all evidence that might be beneficial to the defense. (*Id.* at p. 134, italics added.)

The People argue that "[s]ince obtaining criminal history information is an 'affirmative action' to obtain evidence, this case falls squarely within the rule that the prosecution has no duty to conduct an investigation for the defense." The People are wrong. The six enumerated mandatory disclosure provisions of section 1054.1 are intended to operate with minimal judicial supervision. While it is true the prosecution "has no *general duty* to seek out, obtain, and disclose all evidence that might be beneficial to the defense[,]" it does have the duty, when presented with an informal request from the defense, to satisfy the specific discovery provisions of section 1054 et seq. (*In re Littlefield, supra,* 5 Cal.4th at p. 135, original italics.)

As stated in section 1054, among the primary purposes of standard reciprocal discovery, is to "promote the ascertainment of truth in trials by requiring timely pretrial discovery[,] [¶] [t]o save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested[, and] [¶] [t]o save court time in trial and avoid the necessity for frequent interruptions and postponements." (See *In re Littlefield, supra,* 5 Cal.4th at p. 130.) Section 1054.1 concisely lists six specific items that the prosecution must disclose to the defendant or his or her attorney, and, consistent with the stated purposes of discovery provisions of Proposition 115, the prosecution has a duty to inquire in order to satisfy these requirements.

*Littlefield* held that a witness's address (located in a phone book or in another way "reasonably accessible" to the party with the duty to disclose), even though not " 'in the hands of the prosecutor,' " is in possession or control of the prosecution. (5 Cal.4th at p. 135.) Similarly, the existence of a felony conviction is within the control or possession of the prosecution. The People "contend[] that a blanket requirement to obtain and disclose 'rap sheets' would make little sense in light of the ability of defense counsels to obtain the 'rap sheets' directly from the Department of Justice." However, it is the policy of the Department of Justice to release rap sheets only to prosecutors (Cal. Dept. of Justice, Div. of Law Enforcement, Information Bulletin No. 92-22-BCID, July 29, 1992; Pipes & Gagen, Cal. Criminal Discovery (1995) Disclosure by Prosecutor, § 3:39, pp. 162-163), and defense disclosure requests must go through the prosecutor's office.[2] Not only does the prosecutor have reasonable access to rap sheets, he is the assigned

---

[2]Following *Littlefield,* even if defense was able to obtain the rap sheets directly from the Department of Justice, our conclusion would remain the same. If both sides had direct access to rap sheets, similar to them both having access to an address book, the prosecution would

doorkeeper. Since the prosecutor has reasonable access to rap sheets, and he has "possession" under *Littlefield*, we conclude that a prosecutor shall on a standard discovery request inquire of "the existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial." (§ 1054.1, subd. (d); see *People* v. *Santos* (1994) 30 Cal.App.4th 169, 176 [35 Cal.Rptr.2d 719] [prosecution must disclose the record of a felony conviction, but they need not disclose the actual rap sheets].) If a felony conviction exists, the prosecutor shall disclose that information to the defendant or his attorney at least 30 days prior to trial, "unless good cause is shown why a disclosure should be denied, restricted, or deferred." (§ 1054.7.)

Wright had an undisclosed felony conviction. The People argue the prosecutor did not have a duty to disclose the existence of Wright's felony because he did not personally know Wright had committed a felony. However, his duty is not linked to his personal knowledge; his duty to inquire and disclose is created by section 1054.1 and his reasonable access to rap sheets.

While we conclude the prosecution has a duty to disclose the felony convictions of all material prosecution witnesses when the record is "reasonably accessible" under state law, we note that federal courts have held *Brady* v. *Maryland, supra,* 373 U.S. 83 requires the same result. *Brady* held that ". . . the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Id.* at p. 87 [83 S.Ct. at pp. 1196-1197, 10 L.Ed.2d at p. 218].) The *Brady* disclosure requirement has been extended to include evidence which serves to impeach witness testimony. (*Giglio* v. *United* States (1972) 405 U.S. 150, 154 [92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108]; *United States* v. *Auten* (5th Cir. 1980) 632 F.2d 478, 482.)

The *Auten* court rejected the People's argument that because the conviction information was not known to the prosecution there was no *Brady* violation. The court held the prosecution must disclose evidence that is " 'actually or constructively in its possession or accessible to it.' " (632 F.2d at p. 481; see also *Ouimette* v. *Moran* (1991) 942 F.2d 1 [failure to disclose witness's criminal record and his agreements with the prosecution is *Brady* error]; see also *Kyles* v. *Whitley* (1995) 514 U.S. 419, 421 [115 S.Ct. 1555, 1560, 131 L.Ed.2d 490, 498] [the net effect of the evidence withheld raised a reasonable probability that disclosure would have produced a different result and was a *Brady* error].) In order to survive a *Brady* claim, where the

still have the duty to inquire of criminal records of material witnesses whose credibility is likely to be critical to the outcome of the trial.

prosecution failed to discover and disclose a key witness's criminal background, the Seventh Circuit required extensive checking into the witness's criminal history to show that the government did not "'keep itself in ignorance.'" (*U.S.* v. *Young* (1994) 20 F.3d 758, 764 [government searched FBI and NCIC (National Crime Information Center) records, as well as asking witness directly about his criminal record].) Hence, state and federal law have both held the prosecution is required to disclose the felony convictions of all material prosecution witnesses if the record is "reasonably accessible."

We next consider whether the nondisclosure was prejudicial error, requiring a new trial.

■ "The prosecution's constitutional duty to disclose all substantial material evidence favorable to an accused 'extends to evidence which may reflect on the credibility of a material witness . . . . "[S]uppression of substantial material evidence bearing on the credibility of a key prosecution witness is a denial of due process . . . ." [Citation.]' (*People* v. *Morris* (1988) 46 Cal.3d 1, 30 [249 Cal.Rptr. 119, 756 P.2d 843].) Thus, '[w]hen the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility' may require a new trial." (*People* v. *Hayes* (1992) 3 Cal.App.4th 1238, 1244-1245 [5 Cal.Rptr.2d 105], fns. omitted.)

■ The People contend the trial court erred in finding, *post hoc*, that the district attorney must have known before trial that Wright's credibility was "'likely to be critical to the outcome of the trial.'" The trial court concluded Wright was a "critical witness" and his "credibility was very, very important in this case." As section 1054.1 *is a pretrial* discovery provision, the People are correct that the test is whether or not the witness's credibility *before* trial was likely to be critical to the outcome of the trial. (See § 1054.7.) However, they are incorrect that the trial court erred in its determination.

Before trial, the People should have determined the credibility of Wright was likely to be critical to the outcome of the case, as well as that of other witnesses, such as Officer Cornwell. Wright was a material witness who testified to information that few could provide. First, Wright was the last one to see the vehicle before it crashed, and he watched defendant's car pass closely to his two-year-old child, strong evidence of wanton disregard for the safety of human life. Second, Cornwell testified he was not always behind defendant's car when defendant went through the park, and that he did not "actually" see defendant's car next to Dustin Mayfield or the Wright children. Third, other witnesses gave contradictory testimony, which the prosecution should have anticipated from their pretrial interviews. For instance,

Kevin Horton testified defendant was going about 60 miles per hour, while Officer Cornwell estimated defendant's speed at 30 to 40 miles per hour. Since the other witnesses' recollections were inconsistent and Wright was an eyewitness who saw his child nearly hit, we conclude Wright's credibility was likely to be critical to the outcome of the trial, and the prosecutor had a duty under section 1054.1 to discover and disclose his felony conviction.

Lastly, the People contend that, even if Wright's credibility was likely to be critical to the outcome of the case, "any relief under Proposition 115 is barred by [defendant's] failure to make a request for the information before trial." However, defendant did make a request under discovery provisions of Proposition 115. Defendant did not specifically request background checks on witnesses; instead, he made an informal request by stipulating to standard reciprocal discovery under section 1054, believing the existence of any felony would be disclosed along with the other items under section 1054.1. We conclude the defense's informal request for standard reciprocal discovery was consistent with 1054.5 and was sufficient to spark the prosecution's duty to disclose Wright's felony conviction.

■ " ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*People v. Cox* (1991) 53 Cal.3d 618, 694 [280 Cal.Rptr. 692, 809 P.2d 351].) As the prosecution had a duty to discover and disclose Wright's felony conviction, there was no abuse of discretion. The People did not satisfy their pretrial disclosure responsibilities, and, as such, the grant of a new trial was proper. Therefore, we need not address whether the grant of a new trial was proper on the basis of newly discovered evidence.

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied December 16, 1997.